**UNITED STATES BANKRUPTCY COURT**
**IN THE EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION - FLINT**

IN RE:

FARMHOUSE FAMILY EATERY, INC.,

Debtor.
_______________________________/

Case No. 11- 33913
Chapter 11 Proceeding
Hon. Daniel S. Opperman

**MOTION FOR SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF THE DEBTOR FREE OF CLAIMS, LIENS AND INTERESTS PURSUANT TO 11 U.S.C. §363**

NOW COMES the Debtor, Farmhouse Family Eatery, Inc. ("Debtor"), by and through its attorneys, Lambert, Leser, Isackson, Cook & Giunta, P.C., and in this Motion for Sale of Real Property Pursuant to 11 U.S.C. §363, states as follows:

1. On or about August 19, 2011, the Debtor filed a petition under Chapter 11 of the Bankruptcy Code.

2. Debtor continues to operate as Debtor-in-Possession.

3. The Debtor operates a restaurant at 282 S. Main Street, Lapeer, Michigan 48446 ("Business")

4. The Debtor has been in the process of trying to sell the Business and has obtained a purchase agreement ("Purchase Agreement") for the Business, which Purchase Agreement is attached hereto as Exhibit "B".

5. The purchaser of the Business is Lapeer Family Restaurant, LLC ("Purchaser") and the purchase price for the Business is $170,000.00.

6. The Purchaser of the Business is not related to the Debtor in any manner.

7. The Debtor has attempted to sell this Business for an extended period of time and this is the only purchase offer which has been received.

8. The Debtor will run out of cash to continue operation of the Business by the end of the month and the Purchase Agreement requires a closing before September 1, 2011.

9. If the Business is not sold pursuant to this Purchase Agreement, the Purchaser will be lost and the Debtor will be forced to close the Business.

{00112366}

10. The personal property associated with the Business has a limited value, however, a substantial portion of the value of the Business is in "good will". This "good will" will be lost if the Business is closed.

11. The purchase offer provides that the Purchaser will pay the amount of $170,000.00. The realtor who located the Purchaser is currently holding a deposit of $20,000.00 for the purchase of this Business.

12. The terms of the sale further provide that the Debtor will make $2,000.00 per month payments over a maximum period of two (2) years with an additional $50,000.00 payment being made in approximately six (6) months. This obligation will be memorialized by a Note and Security Agreement in favor of the Debtor.

13. There is a condition precedent in the Purchase Agreement which requires that the Purchaser must be able to lease the real estate and personal property which the Debtor subleased from its shareholder pre-petition.

14. That lease is currently in significant default and the Purchaser has agreed to pay directly to the landlord funds necessary to allow the immediate rescission of the lease and execution of a new lease by the Purchaser. The lease is in the names of the sole shareholder of the Debtor, Shelley Amato, and her husband, individually. The funds being paid to the landlord are significantly less than the total obligation.

15. The Debtor has been working with Restaurant Bar Realty to secure a purchaser for this property and separate appointment documents will be filed to appoint the realtor, so that they may be paid a commission from the sale proceeds.

16. Debtor believes that this sale is in the best interest of creditors due to the fact that it does not have funds available to operate the Business beyond the end of the month, this sale is scheduled to close by September 1, 2011 and if the Business closes, substantially all of the value of the Business will be lost. If this sale is approved, the amount of approximately $170,000.00, less the cost of sale, would be available to creditors of the Debtor, which is substantially more than the few thousand dollars that would be available from liquidation of the minimal equipment and personal property owned by the Debtor.

WHEREFORE, Debtor prays this Honorable Court will enter its Order, in substantially the form attached hereto as Exhibit "A":

1. Authorizing the sale of the Business of the Debtor, pursuant to the terms and conditions of the Purchase Agreement attached hereto as Exhibit "B", which Business is currently located in Lapeer, Michigan for a purchase price of $170,000.00 to Lapeer Family Restaurant, LLC which sale shall be free and clear of all liens, claims and interests under 11 U.S.C. §363, with said liens, claims and interests to follow the proceeds.

2. Authorize the Debtor to deduct from the sale proceeds and pay all estimated closing costs including, but not limited to a brokerage fee pursuant to appointment documents and agreements which will be filed separately with this Court.

3. Grant such other relief as is just and proper.

Respectfully submitted,

LAMBERT, LESER, ISACKSON,
COOK & GIUNTA, P.C.

/s/ Rozanne M. Giunta

Date: 08/19/11 By: ______________________

ROZANNE M. GIUNTA (P29969)
Attorneys for Debtor
916 Washington Avenue
309 Davidson Building
P.O. Box 835
Bay City, Michigan 48707
Phone: (989) 893-3518
rgiunta@lambertleser.com

{00112366}

**UNITED STATES BANKRUPTCY COURT**
**IN THE EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION - FLINT**

IN RE:

FARMHOUSE FAMILY EATERY, INC.,

Debtor.
______________________________/

Case No. 11-33913
Chapter 11 Proceeding
Hon. Daniel S. Opperman

## COVER SHEET FOR MOTION FOR AN ORDER APPROVING SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF THE DEBTOR FREE AND CLEAR OF CLAIMS, LIENS AND INTERESTS PURSUANT TO §363

The Debtor, has filed a Motion for an Order Approving Sale of Substantially all of the Assets of the Debtor Free and Clear of Claims, Liens and Interests Pursuant to 11 U.S.C. §363. Pursuant to E.D. Mich. LBR 6004-1, the Debtor has identified below, by page and paragraph number, the location in the proposed order accompanying the motion of each of the following provisions:

| PROVISION | Contained in proposed order | Location in proposed order |
|---|---|---|
| (1) Provisions concerning the qualifications of the bidding parties. | ____ Yes<br>__X__ No | Page _, ¶ |
| (2) Provisions concerning the criteria for a qualifying bid and any deadlines for (i) submitting such a bid, and (ii) notification of whether the bid made constitutes a qualifying bid. | ____ Yes<br>__X__ No | Page _, ¶ |
| (3) Provisions that require qualified bids to identify points of variation from the stalking horse bid (including price and other terms). | ____ Yes<br>__X__ No | Page __, ¶ __ |
| (4) Provisions pertaining to the conditions to the qualified bidders' obligation to consummate the purchase (including the time period within which the purchaser must close the transaction). | ____ Yes<br>__X__ No | Page __, ¶ __ |
| (5) Provisions pertaining to the amount required for a good faith deposit. | ____ Yes<br>__X__ No | Page __, ¶ __ |
| (6) Provisions that relate to a "Back-Up Buyer" should the first winning bidder fail to close the | ____ Yes | Page __, ¶ __ |

| | | |
|---|---|---|
| transaction within a specified period of time. | _X_ No | |
| (7) No-shop or No-Solicitation provisions including the justification for such provision. | ____ Yes<br>_X_ No | Page __, ¶ __ |
| (8) Provisions relating to Break-Up fees, Topping fees, and/or Expense Reimbursement (including the waiver of such fees due to rebidding). | ____ Yes<br>_X_ No | Page __, ¶ __ |
| (9) Provisions specifying the bidding increments. | ____ Yes<br>_X_ No | Page __, ¶ __ |
| (10) Provisions relating to auction procedures including manner in which auction is to be conducted and when the auction will be open and when it will close. | ____ Yes<br>_X_ No | Page __, ¶ __ |
| (11) Provisions relating to whether the auction will occur and the termination of the auction process and/or sale. | ____ Yes<br>_X_ No | Page __, ¶ __ |
| (12) Provision whether 10 day stay of F.R.Bankr.P. 6004(g) and 6006(d) is waived. | ____ Yes<br>_X_ No | Page __, ¶ __ |
| (13) Provisions regarding timing for notice, submission of bids, objections to sale and other key events. | ____ Yes<br>_X_ No | Page __, ¶ __ |

LAMBERT, LESER, ISACKSON,
COOK & GIUNTA, P.C.

Dated: 08/19/11 By: /s/ Rozanne M. Giunta

ROZANNE M. GIUNTA (P29969)
Attorneys for Debtor
916 Washington Ave., Ste. 309
Bay City, Michigan 48708, (989) 893-3518
rgiunta@lambertleser.com

**UNITED STATES BANKRUPTCY COURT**
**IN THE EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION - FLINT**

IN RE:

FARMHOUSE FAMILY EATERY, INC.,

Debtors.
_______________________________/

Case No. 11-33913
Chapter 11 Proceeding
Hon. Daniel S. Opperman

**ORDER AUTHORIZING SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF THE DEBTOR FREE OF CLAIMS, LIENS AND INTERESTS PURSUANT TO 11 U.S.C. §363**

The Debtor having filed a Motion for Sale of Substantially all of the Assets of the Debtor Free and Claims, Liens and Interests Pursuant to 11 U.S.C. §363, notice having been given to all creditors and interested parties and the Court being fully advised in the premises;

IT IS HEREBY ORDERED that:

1. The sale of the Business of the Debtor is authorized, pursuant to the terms and conditions of the Purchase Agreement attached hereto as Exhibit "B", which Business is currently located in Lapeer, Michigan for a purchase price of $170,000.00 to Lapeer Family Restaurant, LLC which sale shall be free and clear of all liens, claims and interests under 11 U.S.C. §363, with said liens, claims and interests to follow the proceeds; and

2. The Debtor is authorized to deduct from the sale proceeds and pay all estimated closing costs including, but not limited to a brokerage fee pursuant to appointment documents and agreements which will be filed separately with this Court.

{00112368}

EXHIBIT "A"

**ASSET ONLY**
**PURCHASE AGREEMENT FOR BUSINESS**

This Agreement made this August 18, 2011, between Farm House Family Eatery, INC., a Michigan corporation, hereinafter referred to as "Seller", and Lapeer Family Restaurant, LLC., hereinafter referred to as "Purchaser."

The parties recite and declare:

Seller now owns a restaurant business, under the assumed name of Farmhouse Family Restaurant, located at 282 S. Main St., Lapeer, MI, 48446.

Said business includes good will, furniture, fixtures and equipment, as enumerated in EXHIBIT "A" (attached hereto) equipment list, inventory, merchandise, supplies and paraphernalia, and any and all other assets used in the conduct of said business, except those assets enumerated as "Excluded Assets" below.

Seller desires to sell said business and Purchaser desires to buy such business for the price and in the terms and conditions herein set forth.

**NOW, THEREFORE**, in consideration of the mutual promises hereinafter set forth and the further consideration of Twenty Thousand ($20,000.00) dollars paid to Seller's real estate agent, Restaurant Bar Realty, for and as earnest money deposit ("Deposit") which shall be applied to the Purchase Price at time of closing. The parties hereto agree as follows:

**SALE OF BUSINESS**

Seller agrees to sell, convey, transfer, and deliver to Purchaser, free from all liabilities, liens, obligations, and encumbrances, all the assets owned by the Seller in the business known as Farmhouse Family Restaurant, and deliver a bill of sale transferring to the Purchaser all such assets, including but not limited to the good will, equipment, inventory and goods of said business. Purchaser agrees to acquire and accept the above-described business and all the assets thereof as listed in the Purchase Agreement. Seller shall transfer to Purchaser proceeds of unredeemed gift cards or certificates sold prior to closing, or Purchaser may elect to withhold from later payments due to Seller the cost of such gift cards/certificates, with appropriate evidence of same.

EXCLUDED ASSETS: Further, it is acknowledged that excluded from this sale shall be Seller's cash, accounts receivable, depository accounts, checking or savings accounts, certificates of deposit or prepaid assets, including insurance, utility deposits, and the security deposit for the performance of the Lease Agreement, the "Excluded Assets". The deer and elk mounts, and the firearms on

EXHIBIT "B"

the walls are also Excluded Assets, but shall remain in the restaurant to be returned to the owner thereof upon the earlier of the remodeling of the restaurant or when the balance of the Purchase Price is paid off. This sale does not involve the purchase of the corporate entity.

**NON-ASSUMPTION OF OWNER'S LIABILITIES**

The parties agree that Purchaser shall not assume any of the business liabilities and the sale is restricted to the above-described business owned by Seller. This sale will be made pursuant to an Order of the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, said sale to be free and clear of all liens, claims, and interests, with the liens, claims, and interests to follow the proceeds.

**PURCHASE PRICE**

In consideration for the transfer of the above-described business from Seller to Purchaser, Purchaser shall pay to Seller the sum of One Hundred Seventy Thousand ($170,000.00) dollars, the Purchase Price:

Said Purchase Price shall be allocated as follows:

| | | |
|---|---|---|
| Covenant not to compete .................................. | $ | 5,000.00 |
| Good will ........................................................ | $ | 100,000.00 |
| Furniture, Fixtures and Equipment, and paraphernalia.......................................... | $ | 65,000.00 |
| Total: | $ | 170,000.00 |

**PAYMENT OF PURCHASE PRICE**

The Purchase Price of business, as aforesaid, shall be paid as follows.

No additional funds are due at closing, Purchaser having previously tendered. Twenty Thousand ($20,000.00) Dollar Deposit.

The balance of the Purchase Price of One Hundred Fifty Thousand ($150,000.00) dollars shall be evidenced by a Promissory Note approved by Seller and executed by Purchaser payable at the rate of Two Thousand ($2,000.00) dollars, or more, per month, no prepayment penalty, including interest at the rate of Five (5%) percent per annum on the unpaid balance with the first such monthly payment commencing THIRTY (30) days after closing and continuing monthly on the same such date of each succeeding month until principal and interest are paid in full as hereinafter set forth. However, a lump sum principal payment in the amount of Fifty Thousand ($50,000.00) dollars shall be paid

within Six (6) months from the date of closing. Furthermore, the entire balance shall be paid in full within two (2) years from the date of closing.

The said Promissory Note shall provide full acceleration of the entire balance, principal and interest if default should continue for forty five (45) continuous days.

The said Promissory Note shall be secured by a Security Agreement. The Note and Security Agreement shall be prepared by agreement of counsel for the parties.

Said Promissory Note shall further provide for a One Hundred ($100.00) dollar late fee in the event the monthly payment is not made within ten (10) days of the due date, which Purchaser agrees is not a penalty, but assessed and payable for administrative expenses. Time shall be of the essence.

The said Security Agreement securing the Promissory Note shall further provide that the Promissory Note shall be secured by all replacement or additional furniture, fixtures and equipment placed in said place of business and subsequently to closing.

Said Security Agreement shall provide that in the event of Purchaser's default, the Purchaser agrees to reassign the leasehold interest back to the Seller.

Said Security Agreement shall further provide that Purchaser shall insure said property against fire and list Seller as additional insured as their interest may appear, and that upon damage/destruction by fire or other casualty, the insurance proceeds shall be used to repair/rebuild the damaged/destroyed property and if any additional money are needed to be provided by Purchaser.

That insurance policy shall contain a thirty (30) day cancellation notice to Seller.

Said Security Agreement shall also provide that Purchaser shall not be able to sell this business before paying off the full balance owed to Seller without the prior consent of Seller, which consent shall not be unreasonably withheld or delayed.

There shall be cross default provisions in the security agreement and the Lease Agreement between Landlord and Tenant.

**PURCHASE OF INVENTORY.**

Purchaser agrees to pay Seller, upon closing, in cash or certified funds, the wholesale cost of all mutually agreed to useable inventory. Any such sum shall be, in addition to the Purchase Price, heretofore set forth. The inventory taking process shall occur the evening before the closing, and all inventory not purchased by Purchaser shall be removed before the start of business the next day. Any inventory that remains shall become the property of Purchaser to use or dispose of.

**ADJUSTMENTS AT CLOSING.**

Adjustments shall be made at the time of closing for any prepaid items and personal property taxes, for all operating expenses that are usually prorated at the time of the closing, or terminated by Seller and/or transferred into Purchaser's name after the date of the closing, the net amount of which adjustments shall either increase or decrease the purchase price, as the case may be. The Purchaser shall be obligated for all expenses incurred on and after the closing date, and be entitled to all proceeds received on the closing date.

**CLOSING**

The closing shall take place after all closing preparations have been completed, at Purchaser's attorney's office, or as otherwise agreed upon, at 9:30am on September 1, 2011. At such time, upon execution by Purchaser of notes evidencing the unpaid portion of the purchase price then due, Seller shall deliver to Purchaser all the instruments of sale, conveyance, or assignment that may be required for the proper transfer by Seller of all assets of the above described business, free of all encumbrances, which instruments shall contain the usual warranties and affidavits of title.

**REPRESENTATIONS BY SELLER**

Seller represents and warrants, which representations and warranties shall survive the date of the closing, that:

(a) Seller is duly qualified under the laws of the State of Michigan to carry on the business as now owned and conducted within the City of Lapeer, County of Lapeer, State of Michigan.

(b) Seller is the proper and legal owner of the business referred to in this Purchase Agreement, and has good marketable title, free of all restrictions on transfer or assignment and all encumbrances; at or before Closing, Seller shall provide a "duplicate original" of corporate resolutions signed by all of Seller's shareholders and directors authorizing this sale.

(c) (Deleted)

(d) Seller has conducted the business in the ordinary course, and that the sale, transfer, and delivery hereunder to Purchaser is in compliance with the Uniform Commercial Code of the State of Michigan and with all other applicable laws.

(e) This sale will be made pursuant to an Order of the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, said sale to be free and clear of all liens, claims, and interests, with the liens, claims, and interests to follow the proceeds.

(f) There are no employment contracts, pension or profit sharing plans, wages or indebtedness due of any kind to any employee for which the Purchaser would become liable, and that there is no litigation pending or threatened or which would affect Purchaser's interest in said business.

(g) The equipment, instruments, furniture, fixtures and all other physical assets of the Seller to be sold hereunder shall be in working condition as of the date of the closing. Seller agrees not to change the telephone number(s) of the business and consents to its continuous use by the Purchaser.

(h) Seller agrees at closing to discontinue the use of the assumed name Farmhouse Family Restaurant, now used in the conduct of the business and that Seller shall take whatever action Seller can to assure that the Purchaser shall have the sole right to use said name, provided the State of Michigan allows this use of name.

(i) (Deleted)

(j) Unemployment Agency Disclosure: Seller shall comply with all provisions of the Michigan Employment Security Act, as amended, by disclosing to Purchaser the requisite information regarding employment related tax liabilities, payments and rates, etc., and preparing all UIA Schedules.

(k) Seller makes the representations contained in this paragraph and throughout this Agreement knowing fully well that Purchaser has executed this Agreement relying thereon.

(l) Seller has no contracts or commitments extending beyond the date of the closing. Any contracts or obligations that Purchaser does want to continue shall be paid by Seller if they cannot be cancelled without charge as of the Closing date.

**TRANSFER OF BUSINESS AUTHORIZATION.**

This transaction involves business permits and/or licenses, and therefore the following requirements are applicable and binding on the parties:

(a) Immediately after the signing of this Agreement, Purchaser shall apply to the Genesee County Health Department, and any other federal, state or local agency for the transfer to the Purchaser the licenses of the business.

(b) Both Seller and Purchaser shall fulfill immediately any directives or requirements from any governing bodies, in order to expedite the transfer of the licenses to final conclusion.

(c) The parties agree to act with all deliberate speed and to use all efforts to see that the transfer of ownership and all the conditions mentioned in this Agreement are effectuated as quickly as possible.

(d) Purchaser's intentions are to maintain the concept, theme, good will and current staff of the business. Seller agrees to stay on without charge or compensation as consultant for a period of no less than THIRTY (30) days after closing to ensure a seamless transition of ownership.

**SELLER'S AFFIDAVIT.**

(Deleted)

**SELLER'S AUTHORIZATION**

Seller agrees and warrants that the execution and delivery of this Agreement has been duly authorized by the corporate Seller as the business owner, and that the Seller entity is in "good standing" as a Michigan Corporation.

**DEFAULT**

In the event PURCHASER shall default in the performance of its obligations hereunder, SELLER may at its option:

b.) Retain the Earnest Money Deposit as liquidated damages as the sole remedy.

**RISK OF LOSS.**

Seller assumes all risks of destruction, loss or damage by fire or otherwise, prior to the closing of this transaction. If any such destruction, loss, or damage is substantial, Purchaser may at its option terminate this Agreement. In such event, the escrow agent shall forthwith pay to the Purchaser the purchase money deposit held by him and the agent shall be discharged from all liability thereof.

**CONDITIONS PRECEDENT TO PURCHASER'S OBLIGATIONS.**

The obligations of Purchaser under the Purchase Agreement are conditioned on the following terms, all having occurred on or before the closing date.

(a) All actions, proceedings, instruments, and documents required of Seller under this Agreement shall be in a form approved by counsel for the Purchaser, provided that such approval shall not be unreasonably withheld.

(b) The representations and warranties made by Seller herein shall be substantially correct on the closing date, except as affected by transactions completed herein and changes occurring in the ordinary course of business, with the same force and effect as though such representations and warranties had been made on the closing date.

(c) The instruments executed and delivered to Purchaser by Seller pursuant to this Purchase Agreement are valid in accordance with their terms, and effectively vest in Purchaser good and marketable title to the assets and business contemplated by this Agreement, free and clear of any liabilities, obligations, and encumbrances, except those liabilities and obligations expressly assumed by Purchaser as provided herein.

(d) The closing of this transaction is contingent upon the Purchaser securing the necessary licensing and approval of Genesee County Health Department or any other governmental licensing and approval.

(e) Purchaser obtains a new lease with Seller's Landlord, as noted below.

(f) This sale will be made pursuant to an Order of the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, said sale to be free and clear of all liens, claims, and interests, with the liens, claims, and interests to follow the proceeds, permitting the sale to close no later than September 1, 2011.

**LEASE**

The consummation of this transaction is contingent upon Purchaser accepting and signing a new Lease Agreement with Landlord, prior to closing, which is not binding upon Purchaser if the closing fails to occur for any reason whatsoever.

**COVENANT NOT TO COMPETE.**

The Seller, its shareholders, directors and officers, agree that they will not directly or indirectly engage in any new or existing business similar to the business being sold or be in competition with the business presently being

operated by the Seller as either individual, partner, joint venturer, employee, agent or salesperson for any person, firm or corporation. The term of this covenant not to compete shall commence as of the closing date and shall remain in force for a period of ten (10) years after the closing date and shall extend for the area within a ten (10) mile radius of said business. The Seller's shareholders shall all also sign a non-competition agreement at the time of the closing, and shall further execute an agreement by which Seller and its shareholders shall not assign, sell, or otherwise permit the use of the name "Farm House" or "Farmhouse", or any variation of them, in connection with any establishment serving or selling food. Should there be a violation of this provision, the Purchaser may obtain an ex-parte order enjoining such conduct upon Purchaser filing an affidavit that such violation(s) occurred. This ex-parte order shall remain in force until there can be a full adjudication of the matter. If Purchaser can substantiate its claim a permanent injunction and/or an award of damages may be made by the Court.

**DUE DILIGENCE.**

(Deleted)

**INDEMNIFICATION BY SELLER.**

Except as set forth in this Agreement, Seller shall indemnify and hold Purchaser harmless at all times against and in respect to:

(a) All Seller's liabilities, including tax liabilities, of any nature, whether accrued, absolute, contingent, or otherwise, whether known or unknown, and whether expressed in or omitted from financial statements of Seller existing as of the date of the closing.

(b) All liabilities of or claims against Seller arising out of the conduct of Seller before the closing date.

(c) Any damage or deficiency resulting from any misrepresentation, breach of covenant, or non-fulfillment of any agreement on the part of Seller.

(d) All actions, suits, proceedings, demands, assessments, or judgments, including costs and expenses incident to any of the foregoing, pertaining to Seller before the closing date.

**INDEMNIFICATION BY PURCHASER.**

Similarly, Purchaser agrees to indemnify Seller and to hold Seller harmless from any liability incurred after the date of the closing, provided the basis of liability was an event (or non-event) that occurred after closing.

**REPAIRS OF BUSINESS PREMISES.**

(Deleted)

**NOTICES.**

Any notice required or permitted to be given or served upon any party hereto in connection with this Agreement must be in writing and shall be deemed to be completed, legally sufficient when (i) received if personally delivered, (ii) received if deposited with an expedited mail service company for delivery on the next business day (e.g. Federal Express) or (iii) when received or refused when sent by certified letter, return receipt requested, containing such notice, properly addressed, with postage pre-paid, (iv) received via facsimile to the facsimile number set forth below. The addresses of Purchaser and Seller shall be as follows:

**If to Purchaser:**

Farm House Family Eatery, Inc.
c/o Rozanne M. Giunta, Esq.
916 Washington
Bay City, Michigan 48707

**If to Seller:**

Lapeer Family Restaurant, LLC
c/o Mark Altus, Esq.
30500 Northwestern Hwy, Ste 500
Farmington Hills, Michigan 48334

Any party to this Agreement may at any time change its address for notices by giving notice in this manner. Any notice required hereunder may be made by or provided to the Purchaser or Seller's attorneys, as the case may be.

**BROKER'S LISTING**

In consideration of the efforts of the Seller's Broker, Restaurant Bar Realty, LLC., Seller hereby agrees to pay said Broker a commission in accordance with agreement executed between Broker and Seller and warrants that no other Broker is involved.

**MODIFICATION OF AGREEMENT**

The terms, covenants, warranties, representations and conditions of this Agreement may be waived only by a written instrument executed by the party waiving compliance.

**BINDING EFFECT OF AGREEMENT.**

The terms and covenants of this Agreement shall bind the heirs, personal representatives, administrators, executors, assigns and successors of the respective parties, and shall survive the closing of this transaction.

**GENDER REFERENCE**

The use of the gender references is not meant to be a limitation, and the use of a particular gender shall be interpreted to include both masculine, feminine and neuter where the situation so demands, similarly, the use of the singular shall be interpreted to include the plural where the situation so demands and vise versa.

**DOCUMENTS.**

From time to time after the closing, at the Purchaser's request and without further consideration, Seller agrees to execute and deliver such other instruments of conveyance and transfer and take such other actions as Purchaser reasonably may require in order to more effectively convey, transfer, and to vest in Purchaser and to put Purchaser in possession of property to be sold, conveyed, transferred and delivered hereunder.

**GOVERNING LAW.**

Subject to applicable Bankruptcy law requirements that may be to the contrary, this Agreement shall be construed and enforced in accordance with the laws of the State of Michigan. The invalidity or unenforceability of any provisions of this Agreement shall not affect the validity or enforceability of the other provisions and this Agreement shall be construed in all respects as if such invalid or unenforceable provisions were amended.

**DUPLICATE ORIGINALS**

This Agreement may be executed in any number of counterparts, each of which, once executed by both parties, shall be deemed an original but shall constitute one and the same agreement. Any signature delivered by facsimile transmission or any other type of electronic communication shall be deemed to be an original signature.

**CONFIDENTIALITY**

The discussions, terms and conditions of this Agreement, and any documents executed in connection with this Agreement, as well as anything provided or discovered during the Due Diligence Period, shall be strictly confidential between the parties. If either party has any agent or employee provide such information to the other, such agent or employee shall likewise honor the confidentiality provisions of this Agreement.

**EXCLUSIVE NEGOTIATIONS**

The parties agree that during the Due Diligence Period, and thereafter provided that the Purchaser has not cancelled his acceptance hereunder, neither party shall engage in any negotiations with any other party that could result in this intended closing not occurring.

This Agreement is executed by the parties on the dates below, with the last date being the effective date of this Agreement

**Lapeer Family Restaurant, LLC - Purchaser**
**Adel A. Alasad – , Authorized Agent**

8-18-2011
**Date**

**Farm House Family Eatery, Inc. - Seller**
**Shelley Amato, Authorized Agent**

8/19/11
**Date**

C:/Bus/AlasadPA(Farmhouse)Final(8-18-11)

8-16-2011

EQUIPMENT OWNED BY FARMHOUSE EATERY INC.

1. NET POS COMPUTER SYSTEM - W - 4 TERMINALS
2. ALL GRILLS (4) IN KITCHEN
3. 3 FRYERS (2) IN KITCHEN + (1) IN PREP AREA
4. 2 TABLE TOP STEAM TABLES IN KITCHEN
5. TABLE TOP CONVECTION OVEN IN PREP AREA
6. UPRIGHT COOLER IN KITCHEN
7. UPRIGHT FREEZER IN KITCHEN - VICTORY 2 DR
8. THREE WELL MOVABLE STEAMTABLE IN KITCHEN
9. THREE WELL MOVABLE STEAMTABLE IN WAITRESS A
10. FIVE MICROWAVES
11. HOBART MIXER
12. FOOD SLICER IN PREP AREA
13. AMERICAN RANGE COMPANY CONVECTION STOVE
14. SS PREPTABLE IN KITCHEN
15. FREEZER UPRIGHT IN DESSERT AREA
16. ALL ANTIQUE DECORATIONS - PAINTINGS - ECT IN. ALL OF REST.
17. UPRIGHT TOASTER IN KITCHEN
18. 3 SMALL TOASTERS AS SPARES
19. ALL X-MAS + HOLIDAY DECORATIONS IN SHED
20. ALL REMAINING DECORATIONS AND SPARE ITEMS IN SHED.
21. THE SHED ITSELF WE HAD BUILT
22. POTS - PANS - UTENSILS - ECT = ALL
24. SHAKE MACHINE
25. CRES CORE HOT BOX
26. ALL GLASSES - DISHES - SILVERWARE ECT.
27. ALL OTHER PROPERTY USED IN BUSINESS, OWNED BY SELLER

EXHIBIT 'A'