**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION - FLINT**

In re:

FARM HOUSE FAMILY EATERY, INC.
AKA FARMHOUSE FAMILY EATERY, INC.,

               Debtor.

_____/

Chapter 11
Case No. 11-33913
Hon. Daniel S. Opperman

## DEBTOR'S COMBINED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT

## I. INTRODUCTION

NOW COMES the Debtor in the above-captioned matter ("Debtor"), by and through its counsel, Lambert, Leser, Isackson, Cook & Giunta, P.C., and proposes the following Combined Plan of Reorganization and Disclosure Statement (the "Plan") in accordance with 11 U.S.C. § 1121(a). Pursuant to an Order of the Court issued August 26, 2011, the Disclosure Statement may be combined with the Plan into one document as set forth herein, and the hearing regarding approval of the Disclosure Statement and the hearing regarding confirmation of the Plan shall be combined. [Docket No. 15].

This case was filed as a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Code") on August 19, 2011. The Debtor is authorized to continue to operate its business, as a debtor-in-possession, pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No request for appointment of a Chapter 11 trustee or examiner has been made and, as of the date hereof, no official committee has been appointed.

{00136627} 1

Debtor's plan payments in this bankruptcy proceeding are based upon the sale of all the assets on or about the 1st day of September, 2011 to Lapeer Family Restaurant, Inc. A copy of the Purchase Agreement and the Order Confirming Sale is attached hereto as Exhibit "A".

The distribution projections and other information in this Plan are estimates only, and the timing and amount of actual distributions to allowed claim holders may be affected by many factors that cannot be predicted. Therefore, any analyses, estimates, or recovery projections may or may not turn out to be accurate. Claims holders may not rely on this Plan for, and this Plan does not provide, any legal, financial, regulatory, tax, or business advice. The Debtor urges each claim holder to consult with its own advisors with respect to any such legal, financial, regulatory, tax, or business advice in reviewing this Plan.

## II. DEFINITIONS

For purposes of this Plan, except as expressly provided otherwise or unless the context requires otherwise, all capitalized terms not otherwise defined shall have the meanings set forth herein. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning set forth in the Bankruptcy Code or the Bankruptcy Rules.

1.    "**Administrative Claim**" means a claim for payment of an administrative expense of a kind specified in Section 503(b) of the Bankruptcy Code and entitled to priority pursuant to Section 507(a)(2) of the Bankruptcy Code, including, but not limited to, the actual, necessary costs and expenses, incurred on or after the Petition Date, of preserving the Estate and

{00136627}2

operating the businesses of the Debtor, including wages, salaries, or commissions for services rendered after the Petition Date, professional fees, all fees and charges assessed against the Estate under Chapter 123 of title 28, United States Code, and all allowed claims that are entitled to be treated as Administrative Claims pursuant to a final order of the Bankruptcy Court.

2. "**Bankruptcy Code**" means the Bankruptcy Reform Act of 1978, as amended and codified in Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as applicable in this Chapter 11 case.

3. "**Bankruptcy Court**" means the United States Bankruptcy Court for the Eastern District of Michigan, Northern Division, or such other court as may have jurisdiction over this Chapter 11 case.

4. "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 case or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 case or proceedings therein, as the case may be.

5. "**Bar Date**" means the deadlines established by the Bankruptcy Court for filing proofs of claim in the Chapter 11 case, as the context may require.

6. **"Confirmation Date"** means the date 14 days after entry of the Confirmation Order.

7. **"Confirmation Hearing"** means the hearing before the Bankruptcy Court, held under Section 1128 of the Bankruptcy Code, to consider confirmation of this Plan and related matters, as such hearing may be adjourned or continued from time to time.

8. **"Confirmation Order"** means the order entered by the Bankruptcy Court confirming this Plan under Section 1129 of the Bankruptcy Code.

9. **"Debtor"** means the debtor identified in the caption to this pleading.

10. **"Effective Date"** means the date upon which the Order Confirming Plan becomes a final non-appealable Order.

11. **"Estate"** means the bankruptcy estate of the Debtor created pursuant to Section 541 of the Bankruptcy Code.

12. **"Petition Date"** means August 19, 2011, the date the Debtor filed its petition for reorganization relief in the Bankruptcy Court.

13. **"Plan"** means this Combined Plan of Reorganization and Disclosure Statement as herein proposed by the Debtor including any Plan Supplement, all exhibits, and schedules thereto, either in its or their present form or as the same may be further altered, amended, or modified from time to time in accordance with the Bankruptcy Code and Bankruptcy Rules.

14. **"Reorganized Debtor"** means the Debtor as reorganized after the Confirmation Date pursuant to the provisions of this Plan.

{00136627}4

15.    "**Schedules**" means the schedules of assets and liabilities and the statements of financial affairs filed in this Chapter 11 case by the Debtor, as such schedules or statements have been or may be further modified, amended, or supplemented from time to time in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

### III. DEBTOR'S PLAN OF REORGANIZATION

**A.    Classification of Claims and Interest**

Class 1    Administrative claims, asserted against the Estate, as the same are filed, allowed, and ordered paid by the Court.

Class 2    The first secured claim of the Internal Revenue Service to the extent that such claim is allowed and ordered paid by the Court.

Class 3    The second secured claim of the Michigan Department of Treasury to the extent that such claim is allowed and ordered paid by the Court.

Class 4    The third secured claim of the Internal Revenue Service to the extent that such claim is allowed and ordered paid by the Court.

Class 5    The fourth secured claim of the Michigan Department of Treasury to the extent that such claim is allowed and ordered paid by the Court.

Class 6    Priority claims of the Internal Revenue Service, Michigan Department of Treasury and the Michigan Unemployment Agency to the extent the same are allowed, approved, and ordered paid by the Court.

{00136627}5

**Class 7**    General unsecured claims and any portions of other claims asserted as priority or secured which are entitled to unsecured treatment against the Estate that were timely filed, to the extent the same are allowed, approved, and ordered paid by the Court.

**Class 8**    The equity interests in the Debtor corporation held by Shelley Amato.

**B.    Treatment of Classes under the Plan**

Class 1 – Administrative Claims

- Treatment: The administrative claims asserted against the Estate shall be paid in full, is allowed and ordered paid by the Court as negotiated between the administrative claimants and the Debtor. This class will include the attorney fees of the Debtor, as well as some minimal tax claims from the date of filing on August 19, 2011 to the date of sale of all assets on September 1, 2011.

- Voting: This class is unimpaired under the Plan and deemed to have accepted the Plan under Bankruptcy Code section 1126(f). Therefore this class is not entitled to vote on the Plan.

Class 2 – First Filed Secured Claim of the Internal Revenue Service

- Treatment: The Internal Revenue Service has a first secured claim in the amount of $46,643.15, pursuant to liens filed for tax periods on 2/17/10 and 10/22/10. This first secured claim is to be paid from the sale proceeds of the Debtor's assets, as said proceeds become available. A significant portion of the claim will be paid on

confirmation from the funds currently held in the Debtor's trust account after payment

of all administrative claims. Subsequent payments are to be made on a quarterly basis

in the amount of approximately $5,000.00 to $6,000.00 per quarter until the claim is

paid in full. The latest that this claim will be paid is October of 2013. This claim will

bear interest at the statutory amount.

- Voting: This class is impaired under the Plan and therefore entitled to vote.

<u>Class 3 – Second Filed Secured Claim of the Michigan Department of Treasury</u>

- Treatment: The Michigan Department of Treasury has filed a second secured claim in

    the amount of $20,251.78. This second secured claim will be paid from the sale

    proceeds of the Debtor's assets as proceeds become available. The Class 3 claims will

    be paid after payment of Class 1 and Class 2 claims. Subsequent to payment in full of

    Class 1 and Class 2 claimants, the Class 3 claims will be paid at a rate of between

    $5,000.00 and $6,000.00 per quarter until the entire principal balance is paid in full.

    The total principal balance will be paid in full no later than September 13, 2013 when

    the balance on the note evidencing sale of the Debtor's assets is due and payable in full.

- Voting: This class is impaired under the Plan and therefore entitled to vote.

<u>Class 4 –Third Filed Secured Claim of the Internal Revenue Service</u>

- Treatment: The Internal Revenue Service has filed a secured claim in the amount of

    $20,251.78. This third secured claim will be paid from the sale proceeds of the Debtor's

    assets as proceeds become available. The Class 4 claims will be paid after payment of

{00136627}7

Classes 1, 2 and 3 claims. Subsequent to payment in full of Classes 1, 2 and 3, the Class 4 claims will be paid at a rate of between $5,000.00 and $6,000.00 per quarter until the entire principal balance is paid in full. The total principal balance will be paid in full no later than September 13, 2013 when the balance on the note evidencing sale of the Debtor's assets is due and payable in full.

- Voting: This class is impaired under the Plan and therefore entitled to vote.

## Class 5 - Fourth Filed Secured Claim of the Michigan Department of Treasury

- Treatment: The Michigan Department of Treasury has filed the fourth in priority secured claim in the amount of $47,136.00. There are not sufficient proceeds to pay this claim in full, however, after payments of Classes 1 through 4, the Class 5 claim will paid at a rate between $5,000.00 to $6,000.00 per month through September of 2013 when the secured portion of the claim will be paid in full. With respect to the fourth filed secured claim of the Michigan Department of Treasury, to the extent that said proceeds are not sufficient to pay Class 5 in full, the balance becomes a priority claim, paid as a Class 6 claim.

- Voting: This class is impaired under the Plan and therefore entitled to vote.

## Class 6 – Priority Claims of the Internal Revenue Service, Michigan Department of Treasury and Michigan Unemployment Agency

- Treatment: The Debtor will pay these claims, on a pro rata basis, after payment in full of Classes 1 through 5. It is uncertain what the payout will be to the priority creditors and that additional funds from avoidance actions will be necessary in order to pay this

{00136627}8

class of creditors in full. Payment from the purchaser in the amount of approximately $2,000.00 per month will be aggregated and payment made quarterly on a pro rata basis to these creditors. To the extent there are not sufficient funds from the purchaser to pay the Class 6 claims in full, any funds available from avoidance actions or by the Debtor will be utilized to pay these claims.

- Voting: This class is impaired under the Plan and therefore entitled to vote.

Class 7 – General Unsecured Claims

- Treatment: General unsecured creditors will be paid on a pro rata basis after payment of Classes 1 through 6 are paid in full. It is uncertain what percentage will be paid to these creditors in that it will require avoidance action recoveries in order to make payment to this class of creditors.

- Voting: This class is impaired under the Plan and therefore entitled to vote on the Plan.

Class 8 – Equity Interests

- Treatment: Shelley Amato's equity interest in the Debtor corporation, shall be extinguished pursuant to this Plan of Reorganization.

- Voting: This class is impaired under the Plan and deemed to have rejected the Plan under Bankruptcy Code section 1126(f).

**C.    Impaired Classes under the Plan**

Under Section 1126(c) of the Bankruptcy Code, and except as otherwise provided in Section 1126(e) of the Bankruptcy Code, an impaired class of claims has accepted the Plan if

the holders of at least two-thirds in dollar amount and more than one-half in number of the allowed claims in such class actually voting have voted to accept the Plan. All classes except Classes 1 and 10 are impaired under the Plan.

**D.      Payment of U.S. Trustee's Fees**

Immediately upon Confirmation of this Plan, the Debtor will pay all fees due and owing to the U.S. Trustee's Office which have been incurred up to that date, but have not been paid. The Debtor shall serve upon the U.S. Trustee post-confirmation receipt and disbursement reports on a monthly basis, until such time as the case is closed with the Court. The Debtor shall continue to pay quarterly fees to the U.S. Trustee on a timely basis until such time as the case is closed with the Court.

**E.      Executory Contract and Unexpired Lease Assumption and Rejection**

<u>1.      Assumption and Rejection</u>

There are no executory contracts to which the Debtor was a party.

**F.      Collective Bargaining Agreements**

There are no collective bargaining agreements to be assumed or rejected.

**G.      Supplements to the Plan**

Prior to confirmation the Debtor may file amendments and/or supplements to this Plan which shall be incorporated by reference into this Plan or such amended Plan as the Debtor may file and shall be binding on all creditors and interested parties.

## IV.   DESCRIPTION OF DEBTOR AND CAUSES OF BANKRUPTCY

**A.    The Debtor**

The Debtor operated a restaurant in Lapeer, Michigan.  Because of low sales and a difficult economy, the Debtors were unable to pay taxes owed to the State of Michigan and the Internal Revenue Service.  This increase in tax liability caused the Debtors to file a Chapter 11 proceeding and they located a purchaser for the business but could not sell the business based on the numerous tax liens outstanding.  The filing of the bankruptcy proceeding allowed the Debtor to do an immediate sale free and clear of liens, claims and interests and maximize the amount available to pay creditors.

**B.    Principals**

Shelley Amato was the sole owner and manager of the Debtor corporation.  All management of the Debtor ceased upon the sale, on September 1, 2011.

**C.    Primary Causes of Bankruptcy**

The economic downturn in the United States over the past several years has nowhere been felt worse than in Michigan and particularly, in the Lapeer area.

The combination of decreased sales and increase in food prices resulted in a significant buildup of tax liability to various taxing authorities.

## V.   POST-PETITION EVENTS OF SIGNIFICANCE

The following contains an overview of certain events occurring after the Chapter 11 filing, including the administration of the Chapter 11 case, the stabilization of the Debtor's operations, and the Debtor's restructuring initiatives.

### A.   Filing the Chapter 11 Case Petitions

This case was filed as voluntary petition for relief under Chapter 11 of the Bankruptcy Code on August 19, 2011. The appointment of Lambert, Leser, *et al.* was approved by the Court at Docket No. 22. The Debtor was authorized to continue to operate its businesses and manage its properties as debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, until the sale of all of the assets to the Lapeer Family Restaurant, Inc. on September 1, 2011. No request for appointment of a Chapter 11 trustee or examiner has been made and, as of the date hereof, no official committee has been appointed.

### B.   Business Continuation; Litigation Stay

Immediately following the Debtor's chapter 11 filing, a motion for sale of all of the assets was noticed to creditors. This sale was closed on September 1, 2011. The sale proceeds have been paid regularly to the trust account for counsel for the Debtor and the only disbursements made from those sale proceeds have been for administrative claims. An administrative claim was paid to Sysco Corporation pursuant to Court Order in the amount of $10, 696.08. Regular U.S. Trustee's fees have been paid from the Debtor's counsel's trust account, as well.

The Debtor's chapter 11 filings immediately gave rise to the Bankruptcy Code's "automatic stay" which, with limited exceptions, enjoined commencement and continuation of all creditor collection efforts, litigation against the Debtor, and enforcement of liens against the Debtor's property.

**C.     Post-Petition Sales Outside the Ordinary Course of Business**

The sale of potentially all of the assets took place on September 1, 2011. The Debtor has not operated the business or paid any management salaries since at that time. A copy of the Purchase Agreement approved by the Court is attached hereto as Exhibit "A".

**D.     Litigation**

There has been no litigation in this case initiated by the Debtor.

## VI. LIQUIDATION ANALYSIS, ASSETS, LIABILITIES AND CLAIMS

**A.     Liquidation Analysis**

The Liquidation Analysis is attached hereto as Exhibit "B". This is a simple Liquidation Analysis based on the fact that this is a liquidating plan and the sale proceeds will continue to be paid by the purchaser until September of 2013. At the current time, the amount of $46,653.94 remains in the trust account of counsel for the Debtor. Regular payments continue at the rate of $2,000.00 per month until September of 2013 when the balance in the amount of approximately $93,375.00 will be due and payable in full.

{00136627} 13

**B.     Procedures for Resolving Disputed Claims**

<u>1.     Claims Administration</u>

The Debtor, shall be responsible for and shall retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving all claims against, and interests in, the Debtor and making distributions (if any) with respect to all claims and interests.

<u>2.     Filing of Objections</u>

Unless otherwise provided in the Plan or extended by the Bankruptcy Court, any objections to claims and/or interests shall be served and filed on or before the date which is ninety (90) days after the Confirmation Date (the "Claims Objection Deadline"). Notwithstanding any authority to the contrary, an objection to a claim or interest shall be deemed properly served on the holder of the claim or interest if the Debtor or Reorganized Debtor, as the case may be, effect service in any of the following manners: (i) in accordance with Bankruptcy Rule 3007, (ii) to the extent counsel for a holder of a claim or interest is unknown, by first-class mail, postage prepaid, on the signatory on the proof of claim or other representative identified on the proof of claim or any attachment thereto (or at the last known addresses of such holders of claims if no proof of claim is filed or if the Debtor has been notified in writing of a change of address), or (iii) by first-class mail, postage prepaid, on any counsel that has appeared on behalf of the holder of the claim or interest in the Chapter 11 cases and has not withdrawn such appearance.

{00136627} 14

### 3. Claim Dispute Resolution Procedures

Resolution of disputes regarding claims shall be subject to the following parameters:

- If the settlement amount for a disputed claim is less than $5,000.00, the Reorganized Debtor shall be authorized to settle such claim or interest without the need for further Bankruptcy Court approval or further notice.

- If the settlement amount for a disputed claim is greater than or equal to $5,000.00, the Reorganized Debtor, shall file a proposed settlement stipulation with the Bankruptcy Court with notice and hearing consistent with the Local Rules and the Bankruptcy Rules.

- Settlement of any pre-petition controversies in these categories resulting in monetary claims against the Debtor shall be resolved solely by determination and allowance of a claim, subject to the requirements of the Plan.

- Settlement of any postpetition controversies in these categories resulting in monetary claims against the Debtor or Reorganized Debtor may be resolved, where applicable, by the Reorganized Debtor, by an allowance of an administrative claim related to such settlement.

- The Reorganized Debtor is authorized to allow claims against the Debtor and its Estate, where the allowance of such Claims otherwise meets the requirements of the Plan.

- The Reorganized Debtor is authorized to allow claims with a specific priority and security status, where the allowance of such Claims otherwise meets the requirements

{00136627} 15

of the Plan and does not in any way affect, whether as a prior or subordinated lien, the lien of any other party. For purposes of clarity and without limitation, the granting or recognition of a subordinated lien shall not be allowed, absent a Bankruptcy Court order, without the consent of all other lien holders with respect to the affected collateral.

4.      Determination of Claims

Any claim (or any revision, modification, or amendment thereof) determined and liquidated pursuant to (i) the procedures listed in this Plan, or (ii) a final order of the Bankruptcy Court shall be deemed an allowed claim in such liquidated amount and satisfied in accordance with the Plan, unless otherwise ordered by the Bankruptcy Court.

5.      Insider Settlements

Notwithstanding anything to the contrary in the Plan, any settlement that involves an insider, set forth at Section 101(31) of the Bankruptcy Code, shall be effected only in accordance with Bankruptcy Rule 9019(a).

6.      Ordinary Course of Business Exception

The applicable Plan provisions shall in no manner affect, impair, impede, or otherwise alter the right of the Debtor or Reorganized Debtor to resolve any controversy arising in the ordinary course of the Debtor's or Reorganized Debtor's business or under any other order of the Bankruptcy Court.

## 7. Claims Bar Date

Except as provided in the Plan or otherwise agreed, any and all claims for which a proof of claim was filed after the applicable bar date shall be disallowed, expunged and forever barred as of the Confirmation Date without any further notice to or action, order, or approval of the Bankruptcy Court, and holders of such claims may not receive any distributions on account of such claims, unless on or before the Confirmation Date such late claims have been deemed timely filed by a final order.

## 8. Amendments to Claims

On or after the Confirmation Date, except as provided herein, a claim may not be filed or amended without the prior authorization of the Bankruptcy Court, or Reorganized Debtor. To the extent any such claim is filed without such authorization, such claim shall be deemed to be a disallowed claim and expunged without any further notice to or action, order, or approval of the Bankruptcy Court or any other person.

## VII. EXECUTION AND IMPLEMENTATION OF PLAN

### A. Financial Projections

Debtor's financial projections are not required in this matter due to the fact that this is a liquidating Plan. The current amount in Debtor's counsel's trust account is $46,653.94. The amount of approximately $93,375.00 remains due and owing by the purchaser. These are the proceeds, together with any proceeds of avoidance actions, which will fund this liquidating Plan of Reorganization, after any costs and expenses of litigation or distribution.

{00136627} 17

**B.     Continuation of Business**

The business ceased operation on September 1, 2011 and has not operated since that time. It is not contemplated that any business operations will be conducted.

**C.     Tax Ramifications**

The Plan does not contemplate that there will be any tax ramifications as a result of this Plan.

**D.   Claim Discharge and Interest Termination**

Pursuant to Section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Plan or in the Confirmation Order, confirmation of the Plan and the distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Confirmation Date, of all claims and causes of action, whether known or unknown, against, liabilities of, obligations of, rights against, and interests in the Debtor or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such claims, rights, and interests, including, but not limited to, claims and interests that arose before the Confirmation Date, any liability (including withdrawal liability) to the extent such claims relate to services performed by employees of the Debtor prior to the Petition Date and that arise from a termination of employment or a termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Confirmation Date, all debts of the kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each

{00136627} 18

case whether or not (a) a proof of claim based upon such claim, debt, right, or interest is filed

or deemed filed under Section 501 of the Bankruptcy Code, (b) a claim or interest based upon

such claim, debt, right, or interest is allowed under Section 502 of the Bankruptcy Code, or (c)

the holder of such a claim, right, or interest accepted the Plan, the Confirmation Order shall be

a judicial determination of the discharge of all claims against and interests in the Debtor,

subject to the occurrence of the Confirmation Date.

Except as provided in the Plan or the Confirmation Order, as of the Confirmation Date,

all persons that have held, currently hold, or may hold claims or interests that have been

discharged or terminated pursuant to the terms of the Plan are permanently enjoined from

taking any of the following actions against any of the reorganized Debtor or its property on

account of any such discharged claims, debts, liabilities, or terminated interests or rights: (i)

commencing or continuing, in any manner or in any place, any action or other proceeding; (ii)

enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or

order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff,

right of subrogation or recoupment of any kind against any debt, liability, or obligation due to

the Debtor; and (v) commencing or continuing any action in any manner, in any place that does

not comply, or is consistent, with the provisions of the Plan.

**E.  Plan Modification, Revocation, or Withdrawal**

<u>1.  Plan Modification and Amendment</u>

{00136627}19

Except as otherwise provided in the Plan, the Debtor may, from time to time, propose amendments or modifications to this Plan prior to the Confirmation Date, without leave of the Bankruptcy Court. Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modification set forth in this Plan, the Debtor expressly reserves its rights to revoke or withdraw, or to alter, amend or modify materially the Plan with respect to the Debtor, one or more times, after the Confirmation Date. After the Confirmation Date, the Debtor may, with leave of the Bankruptcy Court, and upon notice and opportunity for hearing to the affected creditor(s), remedy any defect or omission, reconcile any inconsistencies in the Plan or in the Confirmation Order, or otherwise modify the Plan.

2.    Effect of Confirmation on Plan Modifications

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to Section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

3.    Plan Revocation or Withdrawal

The Debtor reserves the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent Chapter 11 plans. If the Debtor revokes or withdraws the Plan, or if Confirmation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any claim or interest or class of claims or interests), assumption, assignment, or

{00136627}20

rejection of executory contracts or unexpired leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (i) constitute a waiver or release of any claims, interests, or causes of action; (ii) prejudice in any manner the right of such Debtor or any other person; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other person.

## F.    Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order and the occurrence of the Confirmation Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, including without limitation, jurisdiction to:

- Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any claim or interest, including the resolution of any request for payment of any administrative claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of claims or interests;

- Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to professionals authorized pursuant to the Bankruptcy Code or the Plan;

{00136627}21

- Resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any cure or claims arising therefrom, including cure or claims pursuant to Section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any executory contract or unexpired lease that is assumed; (c) the Reorganized Debtor amending, modifying, or supplementing, after the Confirmation Date, the list of executory contracts or unexpired leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

- Ensure that distributions to holders of allowed claims and interests are accomplished pursuant to the provisions of the Plan;

- Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving any Debtor that may be pending on the Confirmation Date;

- Adjudicate, decide, or resolve any and all matters related to any causes of action held by the Debtor as of the Confirmation Date;

- Adjudicate, decide, or resolve any and all matters related to Section 1141 of the Bankruptcy Code;

- Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and Confirmation Order and all

contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

- Enter and enforce any order for the sale of property pursuant to Sections 363, 1123, or 1146(a) of the Bankruptcy Code;

- Resolve any cases, controversies, suits, disputes, or causes of action that may arise in connection with the consummation, interpretation, or enforcement of the Plan or any person's obligations incurred in connection with the Plan, including but not limited to the obligation of any party to subordinate their debt under the terms of this Plan.

- Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any person with consummation or enforcement of the Plan;

- Resolve any cases, controversies, suits, disputes, or causes of action with respect to the releases, injunctions, and other provisions contained in the Plan, and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

- Resolve any and all cases, controversies, suits, disputes, or causes of action with respect to the repayment or return of distributions and the recovery of additional amounts owed by a holder of a claim for amounts not timely repaid;

- Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

{00136627}23

- Adjudicate any and all disputes arising from or relating to payments or distributions under the Plan;

- Consider any and all modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any final order, including the Confirmation Order;

- Hear and determine requests for the payment or distribution on account of claims entitled to priority pursuant to Section 507 of the Bankruptcy Code;

- Hear and determine any and all disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

- Hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code with any tax incurred or alleged to be incurred by any Debtor or Reorganized Debtor a result of consummation of the Plan being considered to be incurred or alleged to be incurred during the administration of these Chapter 11 Cases for purposes of Section 505(b) of the Bankruptcy Code;

- Hear and determine any and all disputes involving the existence, nature, or scope of the Debtor's discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit

{00136627}24

program, regardless of whether such termination occurred before or after the Confirmation Date;

- Determine any other matters that may arise in connection with or relate to the Plan, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan;

- Enforce any orders previously entered by the Bankruptcy Court;

- Hear any and all other matters not inconsistent with the Bankruptcy Code; and

- Enter an order or Final Decree concluding or closing the Chapter 11 Cases.

## G.  Miscellaneous Provisions

### 1.  Immediate Binding Effect

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Confirmation Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtor, Reorganized Debtor, and any and all holders of claims or interests (irrespective of whether any such holders of claims or interests did not vote to accept or reject the Plan, voted to accept or reject the Plan, or are deemed to accept or reject the Plan), all persons that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each person acquiring property under the Plan, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtor.

{00136627}25

## 2. Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Michigan, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

## 3. Plan Provisions Nonseverable

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtor's consent; and (3) nonseverable and mutually dependent.

{00136627}26

## VIII.  STATUTORY REQUIREMENTS FOR PLAN CONFIRMATION

The following is a brief summary of the plan confirmation process in a proceeding under Chapter 11 of the Bankruptcy Code.  Claim and interest holders are encouraged to review the Bankruptcy Code's relevant provisions and to consult their own attorneys.

### A.    The Confirmation Hearing

Bankruptcy Code Section 1128(a) requires the Bankruptcy Court, after notice, to hold a hearing on plan confirmation.  Under Bankruptcy Code Section 1128(b), any party in interest may object to plan confirmation.  The Court in this case will enter an order setting the confirmation hearing date.  The Bankruptcy Court may adjourn the confirmation hearing from time to time without further notice except by announcing the adjournment date at the confirmation hearing or at any subsequent adjourned confirmation hearing.

### B.    Confirmation Standards

To confirm the Plan, the Bankruptcy Court must find that, among other things, the requirements of Bankruptcy Code Section 1129 are satisfied.  In summary, these requirements include the following:

1.  The Plan complies with all applicable Bankruptcy Code provisions.

2.  The Debtor has complied with the applicable Bankruptcy Code provisions.

3.  The Plan has been proposed in good faith and not by any means forbidden by law.

4.  Any payment made or promised under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and

{00136627}27

incident to the cases, has been disclosed to the Bankruptcy Court, and any such payment made before Plan Confirmation is reasonable, or if such payment is to be fixed after Confirmation, such payment is subject to Bankruptcy Court approval as reasonable.

5. With respect to each class of impaired claims or interests, either each claim or interest holder in such class has accepted the Plan or will receive or retain under the Plan on account of such claim or interest, property of a value, as of the Confirmation Date, not less than the amount such holder would receive or retain if the Debtor was liquidated on such date under chapter 7 of the Bankruptcy Code.

6. Each class of claims or interests entitled to vote on the Plan either has accepted the Plan or is not impaired under the Plan, or the Plan can be confirmed without the approval of each voting class under Bankruptcy Code Section 1129(b).

7. Except to the extent a particular claim holder agrees to different treatment, allowed administrative claims and other allowed priority claims will be fully paid on, or as soon as reasonably practical after, the Confirmation Date.

8. At least one class of impaired claims or interests has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a claim or interest in such class.

{00136627}28

9. Confirmation is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless the liquidation or reorganization is proposed in the Plan.

10. All fees of the type described in 28 U.S.C. § 1930, including the fees of the United States Trustee, will be paid as of the Confirmation Date.

11. The Plan addresses payment of retiree benefits in accordance with Bankruptcy Code Section 1114.

The Debtor believes that the Plan satisfies the requirements of Bankruptcy Code Section 1129, including, without limitation, that (i) the Plan satisfies or will satisfy all of the Bankruptcy Code's statutory requirements; (ii) the Debtor has complied or will have complied with all of the Bankruptcy Code's requirements; and (iii) the Debtor proposed the Plan in good faith.

## C.      Best Interests of Creditors Test

Before it can confirm the Plan, the Bankruptcy Court must find (with certain exceptions) that the Plan provides, with respect to each class, that each claim or interest holder in such class either: (a) has accepted the Plan; or (b) will receive or retain under the Plan property of a value, as of the Confirmation Date, not less than the amount that such Person would receive or retain if the Debtor liquidated under Chapter 7 of the Bankruptcy Code.

In Chapter 7 liquidation cases, unsecured creditors and interest holders are generally paid from available assets in the following order, with no junior class receiving any payments

{00136627}29

until all amounts due to senior classes have been fully paid or any such payment is provided for:

- Secured creditors (to the extent of their collateral's value);
- Administrative and other priority creditors;
- Unsecured creditors;
- Debt expressly subordinated by its terms or by Bankruptcy Court order; and
- Equity interest holders.

As described in more detail in the Liquidation Analysis, the Debtor believes that the value of any distributions in a Chapter 7 case would be less than the value of Plan distributions because, among other reasons, distributions in a Chapter 7 case may not occur for a longer period of time, reducing the distributions' present value. In this regard, it is possible that Chapter 7 distributions could be delayed for a period for a trustee and its professionals to become knowledgeable about the Chapter 11 Cases and the claims against the Debtor. In addition, Chapter 7 distributions are likely to be significantly discounted because of the sale's distressed nature, and because the Chapter 7 trustee's and professionals' fees and expenses would likely exceed those of the Debtor's professionals (further reducing cash available for distribution).

**D.     Financial Feasibility**

Before it can confirm the Plan, the Bankruptcy Court must also find that confirmation is not likely to be followed by the Reorganized Debtor's liquidation or the need for further

{00136627}30

financial reorganization, unless that liquidation or reorganization is contemplated by the Plan. For purposes of showing that the Plan meets this feasibility standard, the Debtor has analyzed the Reorganized Debtor's ability to meet their obligations under the Plan and to retain sufficient liquidity and capital resources to conduct their businesses.

Projections indicate that the Reorganized Debtor should have sufficient cash flow to pay and service their debt obligations and to fund their operations. Accordingly, the Debtor believes that the Plan complies with Bankruptcy Code section 1129(a)(11)'s financial feasibility standard.

E.    **Acceptance by Impaired Classes**

The Bankruptcy Code requires, as a condition to plan confirmation that, except as described in the following Section, each class of impaired claims or equity interests accept the plan. A class not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required. A class is "impaired" unless the plan: (a) leaves unaltered the legal, equitable and contractual rights to which the claim or interest entitles the holder of that claim or interest; (b) cures any default and reinstates the original terms of the obligation; or (c) provides that, on the consummation date, the claim or interest holder receives cash equal to the allowed amount of its claim or, with respect to any interest, any fixed liquidation preference to which the interest holder is entitled or any fixed price at which the Debtor may redeem the security.

## F.    Confirmation Without Acceptance by All Impaired Classes

Bankruptcy Code section 1129(b) allows a Bankruptcy Court to confirm a plan, even if all impaired classes entitled to vote on the plan have not accepted it, provided that the plan has been accepted by at least one impaired class. Bankruptcy Code section 1129(b) states that, notwithstanding an impaired class's failure to accept a plan, the plan shall be confirmed, at the plan proponent's request, in a procedure commonly known as "cram down," so long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to each class of claims or interests impaired that is impaired under, and has not accepted, the plan.

Courts will take into account a number of factors in determining whether a plan discriminates unfairly, including the effect of applicable subordination agreements between parties. Accordingly, a plan could treat two unsecured-creditor classes differently without unfairly discriminating against either class.

The condition that a plan be "fair and equitable" to a non-accepting class of secured claims includes the requirements that: (a) the secured claim holders retain the liens securing their claims for the claims' allowed amount, whether the debtor retains the applicable encumbered property or transfers it to another entity under the plan; and (b) each secured claim holder in the class receives deferred cash payments totaling at least the claims' allowed amount with a present value, as of the plan's effective date, at least equivalent to the value of the secured claimant's interest in the applicable encumbered property.

{00136627}32

The condition that a plan be "fair and equitable" with respect to a non-accepting class of unsecured claims requires that either: (a) the plan provides that each claim holder in the class receive or retain property valued, as of the plan's effective date of the plan, equal to the claim's allowed amount; or (b) any claim or interest holder junior to the claims of the class will not receive or retain under the plan any property for the junior claim or equity interest

The condition that a plan be "fair and equitable" to a non-accepting class of equity interests requires that either: (a) the plan provides that each interest holder in the class receives or retains under the plan property of a value, as of the plan's effective date, equal to the greater of (i) the allowed amount of any fixed liquidation preference to which the interest holder is entitled, (if) any fixed redemption price to which the interest Holder is entitled, or (iii) the interest's value; or (b) if the class does not receive such an amount as required under (a), no class of equity-interests junior to the non-accepting class receives a distribution under the plan.

The Plan provides that if any impaired class rejects the Plan, the Debtor reserves the right to seek to Plan confirmation under Bankruptcy Code Section 1129(b)'s "cram down" provisions. If any impaired class rejects the Plan or is deemed to have rejected the Plan, the Debtor will request Plan confirmation under Bankruptcy Code section 1129(b). The Debtor reserves the right to alter, amend, modify, revoke or withdraw the Plan or any Plan exhibit or supplement, including for the purpose of satisfying Bankruptcy Code Section 1129(b)'s requirements, if necessary.

{00136627}33

## IX. VOTING INSTRUCTIONS

### A. Confirmation Generally

The Bankruptcy Court may confirm a plan only if it determines that the plan complies with the requirements of chapter 11 of the Bankruptcy Code. One of these requirements is that the Bankruptcy Court find, among other things, that the plan has been accepted by the requisite votes of all classes of impaired claims and impaired interests unless approval will be sought under Bankruptcy Code Section 1129(b) despite the non-acceptance by one or more such classes.

### B. Who Can Vote

In general, a claim or interest holder may vote to accept or reject a plan if (i) no party in interest has objected to such claim or interest, and (ii) the claim or interest is impaired by the plan. If the holder of an impaired claim or interest will not receive any distribution under the plan for the claim or interest, the Bankruptcy Code deems such holder to have rejected the plan for that claim or interest. If a claim or interest is not impaired, the Bankruptcy Code deems that the holder of such claim or interest has accepted the plan and the plan proponent need not solicit such holder's vote.

Under Bankruptcy Code Section 1124, a class of claims or interests is deemed to be "impaired" under a plan unless the plan leaves unaltered the claim or interest holder's legal, equitable, and contractual rights, or, notwithstanding any legal right to accelerate payment of such claim or interest, the plan cures all existing defaults (other than defaults resulting from

{00136627}34

the occurrence of bankruptcy events), reinstates the maturity of such claim or interest as it existed before the default, compensates the holder of such claim or interest for any damages incurred as result of reasonable reliance on the holder's legal right to an accelerated payment, and does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest holder is entitled.

Only the following impaired claims in voting classes shall be entitled to vote on the Plan with regard to such claims:

1. Holders of claims for which proofs of claim have been timely filed, as reflected on the claims register,

2. Holders of claims that are listed in the Debtor's schedules, with the exception of those claims that are listed in the schedules as contingent, unliquidated, and/or disputed (excluding such claims listed in the Debtor's Schedules that have been superseded by a timely filed Proof of Claim); and

3. Holders whose claims arise pursuant to an agreement or settlement with the Debtor as reflected in a document filed with the Bankruptcy Court, in an order of the Bankruptcy Court, or in a document executed by the Debtor pursuant to authority granted by the Bankruptcy Court, regardless of whether a proof of claim has been filed.

The assignee of a transferred and assigned claim (whether a timely-filed claim or a claim on the schedules) shall be permitted to vote such claim only if (i) the transfer or assignment has been fully effected under the procedures dictated by Bankruptcy Rule 3001(e)

and (ii) such transferor and assignor of such claim would be permitted to vote such claim if such transfer and assignment had not occurred.

For purposes of determining the claim amount associated with each holder's vote, such amount shall include applicable interest accrued after the Petition Date only if the claim Holder is entitled to payment of interest under the Plan.

A vote may be disregarded under Bankruptcy Code Section 1126(e) if the Bankruptcy Court determines that it was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

## C.    Establishing Claim Amounts

In tabulating votes, the following hierarchy will be used to determine the claim amount associated with each creditor's vote:

1) The claim's allowed amount, if the claim has been allowed pursuant to Court order;

2) The claim amount settled and/or agreed upon by the Debtor, as reflected in a court pleading, stipulation, term sheet, agreement, or other document filed with the Bankruptcy Court, in an order entered by the Bankruptcy Court, or in a document executed by the Debtor pursuant to authority granted by the Bankruptcy Court, regardless of whether a proof of claim has been filed;

3) The claim amount contained on a proof of claim that has been timely filed by the relevant bar date (or deemed timely filed by the Bankruptcy Court under applicable law); provided, however, that ballots cast by holders whose claims are not listed on the

Debtor's schedules, but who timely filed proofs of claim in unliquidated or unknown amounts that are not the subject of an objection filed before the voting deadline, will count for satisfying the numerosity requirement of Section 1126(c) of the Bankruptcy Code, and the unliquidated or unknown portion of the Claims will count in the amount of $1.00 solely for the purposes of satisfying the dollar amount provisions of Section 1126(c) of the Bankruptcy Code;

4) The claim amount listed in the Debtor's schedules, provided that such claim is not scheduled as contingent, disputed, and/or unliquidated and has not been paid.

5) In the absence of any of the foregoing, at zero.

The claim amount established pursuant to the foregoing will control for voting purposes only, and will not be determinative of the allowed amount of any claim.

**D.      Ballot Tabulation**

The following voting procedures and standard assumptions shall be used in tabulating ballots:

1) Unless a ballot being furnished is timely submitted on or prior to the voting deadline, the Debtor may reject such ballot as invalid and, therefore, decline to count it in connection with confirmation;

2) The method of delivery of ballots to be sent to Debtor's counsel is at the election and risk of each holder, and except as otherwise provided, a ballot will be deemed delivered only when Debtor's counsel actually receives the original executed ballot;

{00136627}37

3) An original executed ballot is required to be submitted by the person submitting such ballot. Delivery of a ballot to the Debtor's Counsel by facsimile, e-mail, or any other electronic means will not be valid;

4) The Debtor expressly reserves the right to amend from time to time the terms of the Plan in accordance with the terms thereof (subject to compliance with the requirements of Section 1127 of the Bankruptcy Code and the terms of the Plan regarding modification);

5) If multiple ballots are received from the same claim holder with respect to the same claim prior to the voting deadline, the latest valid ballot will be deemed to reflect that voter's intent and will supersede and revoke any prior received ballot for the same claim;

6) Claim holders must vote all of their claims within a particular class either to accept or to reject the Plan and may not split such votes. Accordingly, a ballot that partially rejects and partially accepts the Plan will not be counted. Further, to the extent there are multiple claims within the same class, the Debtor may, in its sole discretion, aggregate the claims of any particular holder within a class for the purpose of counting votes;

7) A person signing a ballot in its capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity should indicate such capacity when signing and must submit

proper evidence to the requesting party to so act on behalf of such holder or beneficial holder;

8) The Debtor, subject to contrary order of the Bankruptcy Court, may waive any defects or irregularities as to any particular ballot at any time, either before or after the voting deadline, and any such waivers will be documented in the voting report;

9) Neither the Debtor nor any other person, will be under any duty to provide notification of defects or irregularities with respect to delivered ballots other than as provided in the voting report, nor will any of them incur any liability for failure to provide such notification;

10) Unless waived or as ordered by the Bankruptcy Court, any defects or irregularities in connection with deliveries of ballots must be cured prior to the voting deadline or such ballots will not be counted;

11) If a claim is listed in the schedules as being a non-priority claim (or is not listed in the schedules) and a proof of claim is filed as a priority claim (in whole or in part), such claim will be temporarily allowed for voting purposes as a non-priority claim in an amount that such claim would have been so allowed had such proof of claim been filed as a non-priority claim;

12) If a claim is listed in the schedules as being an unsecured claim (or is not listed in the schedules) and a proof of claim is filed as a secured claim (in whole or in part), such

claim will be temporarily allowed for voting purposes as an unsecured claim in an amount that such claim would have been so allowed had such proof of claim been filed as an unsecured claim.

13) Subject to any contrary order of the Bankruptcy Court, the Debtor reserves the right to reject any and all ballots not in proper form, the acceptance of which, in the opinion of the Debtor, would not be in accordance with the provisions of the Bankruptcy Code or the Bankruptcy Rules; provided, however, that any such rejections will be documented in the voting report;

14) If a claim has been estimated or otherwise allowed for voting purposes only by an order of the Bankruptcy Court, such claim shall be temporarily allowed in the amount so estimated or allowed by the Bankruptcy Court for voting purposes only and not for purposes of allowance or distribution;

15) The following ballots shall not be counted in determining the acceptance or rejection of the Plan: (i) any ballot that is illegible or contains insufficient information to permit the identification of the claim holder; (ii) any ballot cast by a person that does not hold a claim in a class that is entitled to vote on the Plan; (iii) any ballot cast for a claim listed on the Debtor's schedules as contingent, unliquidated, and/or disputed for which no proof of claim was timely filed; (iv) any unsigned ballot or one lacking an original signature; and (v) any ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan.

{00136627}40

LAMBERT, LESER, ISACKSON,
COOK & GIUNTA, P.C.

/s/ Rozanne M. Giunta

Dated: 5/18/12          BY: _____

ROZANNE M. GIUNTA (P29969)
Attorneys for Debtor
P.O. Box 835
Bay City, MI 48707-0835
Phone: (989) 893-3518
rgiunta@lambertleser.com


FARMHOUSE FAMILY EATERY, INC.

Dated: 5/17/12          BY: /s/ Shelley Amato
                            SHELLEY AMATO, PRESIDENT

{00136627}41

LAMBERT, LESER, ISACKSON,
COOK & GIUNTA, P.C.

/s/ Rozanne M. Giunta

Dated: _____     BY: _____

ROZANNE M. GIUNTA (P29969)
Attorneys for Debtor
P.O. Box 835
Bay City, MI 48707-0835
Phone: (989) 893-3518
rgiunta@lambertleser.com

FARMHOUSE FAMILY EATERY, INC.

Dated: 5-17-2012     BY: /s/ Shelley Amato
                         SHELLEY AMATO, PRESIDENT

{00136627\4}

## ASSET ONLY
## PURCHASE AGREEMENT FOR BUSINESS

This Agreement made this August 18, 2011, between Farm House Family Eatery, INC., a Michigan corporation, hereinafter referred to as "Seller", and Lapeer Family Restaurant, LLC., hereinafter referred to as "Purchaser."

The parties recite and declare:

Seller now owns a restaurant business, under the assumed name of Farmhouse Family Restaurant, located at 282 S. Main St., Lapeer, MI, 48446.

Said business includes good will, furniture, fixtures and equipment, as enumerated in EXHIBIT "A" (attached hereto) equipment list, inventory, merchandise, supplies and paraphernalia, and any and all other assets used in the conduct of said business, except those assets enumerated as "Excluded Assets" below.

Seller desires to sell said business and Purchaser desires to buy such business for the price and in the terms and conditions herein set forth.

**NOW, THEREFORE**, in consideration of the mutual promises hereinafter set forth and the further consideration of Twenty Thousand ($20,000.00) dollars paid to Seller's real estate agent, Restaurant Bar Realty, for and as earnest money deposit ("Deposit") which shall be applied to the Purchase Price at time of closing. The parties hereto agree as follows:

## SALE OF BUSINESS

Seller agrees to sell, convey, transfer, and deliver to Purchaser, free from all liabilities, liens, obligations, and encumbrances, all the assets owned by the Seller in the business known as Farmhouse Family Restaurant, and deliver a bill of sale transferring to the Purchaser all such assets, including but not limited to the good will, equipment, inventory and goods of said business. Purchaser agrees to acquire and accept the above-described business and all the assets thereof as listed in the Purchase Agreement. Seller shall transfer to Purchaser proceeds of unredeemed gift cards or certificates sold prior to closing, or Purchaser may elect to withhold from later payments due to Seller the cost of such gift cards/certificates, with appropriate evidence of same.

EXCLUDED ASSETS: Further, it is acknowledged that excluded from this sale shall be Seller's cash, accounts receivable, depository accounts, checking or savings accounts, certificates of deposit or prepaid assets, including insurance, utility deposits, and the security deposit for the performance of the Lease Agreement, the "Excluded Assets". The deer and elk mounts, and the firearms on

C:/Bus/AlssadPA(Farmhouse)Final(8-18-11)

**EXHIBIT "A"**

the walls are also Excluded Assets, but shall remain in the restaurant to be returned to the owner thereof upon the earlier of the remodeling of the restaurant or when the balance of the Purchase Price is paid off. This sale does not involve the purchase of the corporate entity.

## NON-ASSUMPTION OF OWNER'S LIABILITIES

The parties agree that Purchaser shall not assume any of the business liabilities and the sale is restricted to the above-described business owned by Seller. This sale will be made pursuant to an Order of the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, said sale to be free and clear of all liens, claims, and interests, with the liens, claims, and interests to follow the proceeds.

## PURCHASE PRICE

In consideration for the transfer of the above-described business from Seller to Purchaser, Purchaser shall pay to Seller the sum of One Hundred Seventy Thousand ($170,000.00) dollars, the Purchase Price:

Said Purchase Price shall be allocated as follows:

| | | |
|---|---|---|
| Covenant not to compete | $ | 5,000.00 |
| Good will | $ | 100,000.00 |
| Furniture, Fixtures and Equipment, and paraphernalia | $ | 65,000.00 |
| Total: | $ | 170,000.00 |

## PAYMENT OF PURCHASE PRICE

The Purchase Price of business, as aforesaid, shall be paid as follows.

No additional funds are due at closing, Purchaser having previously tendered. Twenty Thousand ($20,000.00) Dollar Deposit.

The balance of the Purchase Price of One Hundred Fifty Thousand ($150,000.00) dollars shall be evidenced by a Promissory Note approved by Seller and executed by Purchaser payable at the rate of Two Thousand ($2,000.00) dollars, or more, per month, no prepayment penalty, including interest at the rate of Five (5%) percent per annum on the unpaid balance with the first such monthly payment commencing THIRTY (30) days after closing and continuing monthly on the same such date of each succeeding month until principal and interest are paid in full as hereinafter set forth. However, a lump sum principal payment in the amount of Fifty Thousand ($50,000.00) dollars shall be paid

within Six (6) months from the date of closing. Furthermore, the entire balance shall be paid in full within two (2) years from the date of closing.

The said Promissory Note shall provide full acceleration of the entire balance, principal and interest if default should continue for forty five (45) continuous days.

The said Promissory Note shall be secured by a Security Agreement. The Note and Security Agreement shall be prepared by agreement of counsel for the parties.

Said Promissory Note shall further provide for a One Hundred ($100.00) dollar late fee in the event the monthly payment is not made within ten (10) days of the due date, which Purchaser agrees is not a penalty, but assessed and payable for administrative expenses. Time shall be of the essence.

The said Security Agreement securing the Promissory Note shall further provide that the Promissory Note shall be secured by all replacement or additional furniture, fixtures and equipment placed in said place of business and subsequently to closing.

Said Security Agreement shall provide that in the event of Purchaser's default, the Purchaser agrees to reassign the leasehold interest back to the Seller.

Said Security Agreement shall further provide that Purchaser shall insure said property against fire and list Seller as additional insured as their interest may appear, and that upon damage/destruction by fire or other casualty, the insurance proceeds shall be used to repair/rebuild the damaged/destroyed property and if any additional money are needed to be provided by Purchaser.

That insurance policy shall contain a thirty (30) day cancellation notice to Seller.

Said Security Agreement shall also provide that Purchaser shall not be able to sell this business before paying off the full balance owed to Seller without the prior consent of Seller, which consent shall not be unreasonably withheld or delayed.

There shall be cross default provisions in the security agreement and the Lease Agreement between Landlord and Tenant.

C:/Bus/AlassadPA(Farmhouse)Final(8-18-11)

## PURCHASE OF INVENTORY.

Purchaser agrees to pay Seller, upon closing, in cash or certified funds, the wholesale cost of all mutually agreed to useable inventory. Any such sum shall be, in addition to the Purchase Price, heretofore set forth. The inventory taking process shall occur the evening before the closing, and all inventory not purchased by Purchaser shall be removed before the start of business the next day. Any inventory that remains shall become the property of Purchaser to use or dispose of.

## ADJUSTMENTS AT CLOSING.

Adjustments shall be made at the time of closing for any prepaid items and personal property taxes, for all operating expenses that are usually prorated at the time of the closing, or terminated by Seller and/or transferred into Purchaser's name after the date of the closing, the net amount of which adjustments shall either increase or decrease the purchase price, as the case may be. The Purchaser shall be obligated for all expenses incurred on and after the closing date, and be entitled to all proceeds received on the closing date.

## CLOSING

The closing shall take place after all closing preparations have been completed, at Purchaser's attorney's office, or as otherwise agreed upon, at 9:30am on September 1, 2011. At such time, upon execution by Purchaser of notes evidencing the unpaid portion of the purchase price then due, Seller shall deliver to Purchaser all the instruments of sale, conveyance, or assignment that may be required for the proper transfer by Seller of all assets of the above described business, free of all encumbrances, which instruments shall contain the usual warranties and affidavits of title.

## REPRESENTATIONS BY SELLER

Seller represents and warrants, which representations and warranties shall survive the date of the closing, that:

(a) Seller is duly qualified under the laws of the State of Michigan to carry on the business as now owned and conducted within the City of Lapeer, County of Lapeer, State of Michigan.

(b) Seller is the proper and legal owner of the business referred to in this Purchase Agreement, and has good marketable title, free of all restrictions on transfer or assignment and all encumbrances; at or before Closing, Seller shall provide a "duplicate original" of corporate resolutions signed by all of Seller's shareholders and directors authorizing this sale.

C:/Bus/AJasadPA(Farmhouse)Final(8-18-11)

(c) (Deleted)

(d) Seller has conducted the business in the ordinary course, and that the sale, transfer, and delivery hereunder to Purchaser is in compliance with the Uniform Commercial Code of the State of Michigan and with all other applicable laws.

(e) This sale will be made pursuant to an Order of the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, said sale to be free and clear of all liens, claims, and interests, with the liens, claims, and interests to follow the proceeds.

(f) There are no employment contracts, pension or profit sharing plans, wages or indebtedness due of any kind to any employee for which the Purchaser would become liable, and that there is no litigation pending or threatened or which would affect Purchaser's interest in said business.

(g) The equipment, instruments, furniture, fixtures and all other physical assets of the Seller to be sold hereunder shall be in working condition as of the date of the closing. Seller agrees not to change the telephone number(s) of the business and consents to its continuous use by the Purchaser.

(h) Seller agrees at closing to discontinue the use of the assumed name Farmhouse Family Restaurant, now used in the conduct of the business and that Seller shall take whatever action Seller can to assure that the Purchaser shall have the sole right to use said name, provided the State of Michigan allows this use of name.

(i)  (Deleted)

(j)  Unemployment Agency Disclosure: Seller shall comply with all provisions of the Michigan Employment Security Act, as amended, by disclosing to Purchaser the requisite information regarding employment related tax liabilities, payments and rates, etc., and preparing all UIA Schedules.
(k) Seller makes the representations contained in this paragraph and throughout this Agreement knowing fully well that Purchaser has executed this Agreement relying thereon.

(l)  Seller has no contracts or commitments extending beyond the date of the closing. Any contracts or obligations that Purchaser does want to continue shall be paid by Seller if they cannot be cancelled without charge as of the Closing date.

C:/Bus/AlassadPA(Farmhouse)Final(8-18-11)

## TRANSFER OF BUSINESS AUTHORIZATION.

This transaction involves business permits and/or licenses, and therefore the following requirements are applicable and binding on the parties:

(a) Immediately after the signing of this Agreement, Purchaser shall apply to the Genesee County Health Department, and any other federal, state or local agency for the transfer to the Purchaser the licenses of the business.

(b) Both Seller and Purchaser shall fulfill immediately any directives or requirements from any governing bodies, in order to expedite the transfer of the licenses to final conclusion.

(c) The parties agree to act with all deliberate speed and to use all efforts to see that the transfer of ownership and all the conditions mentioned in this Agreement are effectuated as quickly as possible.

(d) Purchaser's intentions are to maintain the concept, theme, good will and current staff of the business. Seller agrees to stay on without charge or compensation as consultant for a period of no less than THIRTY (30) days after closing to ensure a seamless transition of ownership.

## SELLER'S AFFIDAVIT.

(Deleted)

## SELLER'S AUTHORIZATION

Seller agrees and warrants that the execution and delivery of this Agreement has been duly authorized by the corporate Seller as the business owner, and that the Seller entity is in "good standing" as a Michigan Corporation.

## DEFAULT

In the event PURCHASER shall default in the performance of its obligations hereunder, SELLER may at its option:

b.) Retain the Earnest Money Deposit as liquidated damages as the sole remedy.

## RISK OF LOSS.

Seller assumes all risks of destruction, loss or damage by fire or otherwise, prior to the closing of this transaction. If any such destruction, loss, or damage is substantial, Purchaser may at its option terminate this Agreement. In such event, the escrow agent shall forthwith pay to the Purchaser the purchase money deposit held by him and the agent shall be discharged from all liability thereof.

C:/Bus/AlasadPA(Farmhouse)Final(8-18-11)

## CONDITIONS PRECEDENT TO PURCHASER'S OBLIGATIONS.

The obligations of Purchaser under the Purchase Agreement are conditioned on the following terms, all having occurred on or before the closing date.

(a) All actions, proceedings, instruments, and documents required of Seller under this Agreement shall be in a form approved by counsel for the Purchaser, provided that such approval shall not be unreasonably withheld.

(b) The representations and warranties made by Seller herein shall be substantially correct on the closing date, except as affected by transactions completed herein and changes occurring in the ordinary course of business, with the same force and effect as though such representations and warranties had been made on the closing date.

(c) The instruments executed and delivered to Purchaser by Seller pursuant to this Purchase Agreement are valid in accordance with their terms, and effectively vest in Purchaser good and marketable title to the assets and business contemplated by this Agreement, free and clear of any liabilities, obligations, and encumbrances, except those liabilities and obligations expressly assumed by Purchaser as provided herein.

(d) The closing of this transaction is contingent upon the Purchaser securing the necessary licensing and approval of Genesee County Health Department or any other governmental licensing and approval.

(e) Purchaser obtains a new lease with Seller's Landlord, as noted below.

(f) This sale will be made pursuant to an Order of the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, said sale to be free and clear of all liens, claims, and interests, with the liens, claims, and interests to follow the proceeds, permitting the sale to close no later than September 1, 2011.

## LEASE

The consummation of this transaction is contingent upon Purchaser accepting and signing a new Lease Agreement with Landlord, prior to closing, which is not binding upon Purchaser if the closing fails to occur for any reason whatsoever.

## COVENANT NOT TO COMPETE.

The Seller, its shareholders, directors and officers, agree that they will not directly or indirectly engage in any new or existing business similar to the business being sold or be in competition with the business presently being

C:/Bus/AlasadPA(Farmhouse)Final(8-18-11)

operated by the Seller as either individual, partner, joint venturer, employee, agent or salesperson for any person, firm or corporation. The term of this covenant not to compete shall commence as of the closing date and shall remain in force for a period of ten (10) years after the closing date and shall extend for the area within a ten (10) mile radius of said business. The Seller's shareholders shall all also sign a non-competition agreement at the time of the closing, and shall further execute an agreement by which Seller and its shareholders shall not assign, sell, or otherwise permit the use of the name "Farm House" or "Farmhouse", or any variation of them, in connection with any establishment serving or selling food. Should there be a violation of this provision, the Purchaser may obtain an ex-parte order enjoining such conduct upon Purchaser filing an affidavit that such violation(s) occurred. This ex-parte order shall remain in force until there can be a full adjudication of the matter. If Purchaser can substantiate its claim a permanent injunction and/or an award of damages may be made by the Court.

## DUE DILIGENCE.

(Deleted)

## INDEMNIFICATION BY SELLER.

Except as set forth in this Agreement, Seller shall indemnify and hold Purchaser harmless at all times against and in respect to:

(a) All Seller's liabilities, including tax liabilities, of any nature, whether accrued, absolute, contingent, or otherwise, whether known or unknown, and whether expressed in or omitted from financial statements of Seller existing as of the date of the closing.

(b) All liabilities of or claims against Seller arising out of the conduct of Seller before the closing date.

(c) Any damage or deficiency resulting from any misrepresentation, breach of covenant, or non-fulfillment of any agreement on the part of Seller.

(d) All actions, suits, proceedings, demands, assessments, or judgments, including costs and expenses incident to any of the foregoing, pertaining to Seller before the closing date.

## INDEMNIFICATION BY PURCHASER.

Similarly, Purchaser agrees to indemnify Seller and to hold Seller harmless from any liability incurred after the date of the closing, provided the basis of liability was an event (or non-event) that occurred after closing.

C:/Bus/AlasadPA(Farmhouse)Final(8-18-11)

## REPAIRS OF BUSINESS PREMISES.

(Deleted)

## NOTICES.

Any notice required or permitted to be given or served upon any party hereto in connection with this Agreement must be in writing and shall be deemed to be completed, legally sufficient when (i) received if personally delivered, (ii) received if deposited with an expedited mail service company for delivery on the next business day (e.g. Federal Express) or (iii) when received or refused when sent by certified letter, return receipt requested, containing such notice, properly addressed, with postage pre-paid, (iv) received via facsimile to the facsimile number set forth below. The addresses of Purchaser and Seller shall be as follows:

| If to Purchaser: | If to Seller: |
|---|---|
| Farm House Family Eatery, Inc. | Lapeer Family Restaurant, LLC |
| c/o Rozanne M. Giunta, Esq. | c/o Mark Altus, Esq. |
| 916 Washington | 30500 Northwestern Hwy, Ste 500 |
| Bay City, Michigan 48707 | Farmington Hills, Michigan 48334 |

Any party to this Agreement may at any time change its address for notices by giving notice in this manner. Any notice required hereunder may be made by or provided to the Purchaser or Seller's attorneys, as the case may be.

## BROKER'S LISTING

In consideration of the efforts of the Seller's Broker, Restaurant Bar Realty, LLC., Seller hereby agrees to pay said Broker a commission in accordance with agreement executed between Broker and Seller and warrants that no other Broker is involved.

## MODIFICATION OF AGREEMENT

The terms, covenants, warranties, representations and conditions of this Agreement may be waived only by a written instrument executed by the party waiving compliance.

## BINDING EFFECT OF AGREEMENT.

The terms and covenants of this Agreement shall bind the heirs, personal representatives, administrators, executors, assigns and successors of the respective parties, and shall survive the closing of this transaction.

C:/Bus/AlasadPA(Farmhouse)Final(8-18-11)

## GENDER REFERENCE

The use of the gender references is not meant to be a limitation, and the use of a particular gender shall be interpreted to include both masculine, feminine and neuter where the situation so demands, similarly, the use of the singular shall be interpreted to include the plural where the situation so demands and vise versa.

## DOCUMENTS.

From time to time after the closing, at the Purchaser's request and without further consideration, Seller agrees to execute and deliver such other instruments of conveyance and transfer and take such other actions as Purchaser reasonably may require in order to more effectively convey, transfer, and to vest in Purchaser and to put Purchaser in possession of property to be sold, conveyed, transferred and delivered hereunder.

## GOVERNING LAW.

Subject to applicable Bankruptcy law requirements that may be to the contrary, this Agreement shall be construed and enforced in accordance with the laws of the State of Michigan. The invalidity or unenforceability of any provisions of this Agreement shall not affect the validity or enforceability of the other provisions and this Agreement shall be construed in all respects as if such invalid or unenforceable provisions were amended.

## DUPLICATE ORIGINALS

This Agreement may be executed in any number of counterparts, each of which, once executed by both parties, shall be deemed an original but shall constitute one and the same agreement. Any signature delivered by facsimile transmission or any other type of electronic communication shall be deemed to be an original signature.

## CONFIDENTIALITY

The discussions, terms and conditions of this Agreement, and any documents executed in connection with this Agreement, as well as anything provided or discovered during the Due Diligence Period, shall be strictly confidential between the parties. If either party has any agent or employee provide such information to the other, such agent or employee shall likewise honor the confidentiality provisions of this Agreement.

## EXCLUSIVE NEGOTIATIONS

The parties agree that during the Due Diligence Period, and thereafter provided that the Purchaser has not cancelled his acceptance hereunder, neither party shall engage in any negotiations with any other party that could result in this intended closing not occurring.

C:/Bus/AlasadPA(Farmhouse)Final(8-18-11)

This Agreement is executed by the parties on the dates below, with the last date being the effective date of this Agreement

_Adel Alasad (signature)_

Lapeer Family Restaurant, LLC - Purchaser
Adel A. Alasad ~ , Authorized Agent

8-18-2011

Date

_Shelley Amato (signature)_

Farm House Family Eatery, Inc. - Seller
Shelley Amato, Authorized Agent

8/01/11

Date

C:/Bus/AlasadPA(Farmhouse)Final(8-18-11)

8-16-201.

EQUIPMENT OWNED By FARMHOUSE Eatery INC

1. NET POS Computer System -w- 4 TERMINALS
2. ALL GRILLS (4) IN KITCHEN
3. 3 FRYERS (2) IN KITCHEN + (1) IN PREP AREA
4. 2 TABLE TOP STEAM TABLES IN KITCHEN
5. TABLE TOP CONVECTION OVEN IN PREP AREA
6. UPRIGHT COOLER IN KITCHEN
7. UPRIGHT FREEZER IN KITCHEN - Victory 2 Dr
8. THREE WELL MOVABLE STEAMTABLE IN KITCHEN
9. THREE WELL MOVABLE STEAMTABLE IN WAITRESS 2
10. FIVE MICROWAVES
11. HOBART MIXER
12. FOOD SLICER IN PREP AREA
13. AMERICAN RANGE COMPANY CONVECTION STOVE
14. SS PREPTABLE IN KITCHEN
15. FREEZER UPRIGHT IN DESSERT AREA
16. ALL ANTIQUE DECORATIONS - PAINTINGS - ECT IN. ALL OF REST.
17. UPRIGHT TOASTER IN KITCHEN
18. 3 SMALL TOASTERS AS SPARES
19. ALL X-MAS & HOLIDAY DECORATIONS IN SHED
20. ALL REMAINING DECORATIONS AND SPARE ITEMS IN SHED.
21. THE SHED ITSELF WE HAD BUILT
22. POTS - PANS - UTENSILS - ECT = ALL
23. SHAKE MACHINE
24. CRES CORE HOT BOX
25. ALL GLASSES - DISHES - SILVERWARE ECT.
26. ALL OTHER PROPERTY USED IN BUSINESS, OWNED BY SELLER

## LIQUIDATION ANALYSIS

| | |
|---|---|
| Cash on Hand | 46,653.00 |
| Sale Proceeds Remaining to be Paid | Approximately 93,375.00 |
| Estimated Administrative Expenses | 44,000.00 |
| Balance Available to Creditors | 96,028.00 |

| | |
|---|---|
| First Secured Claim of Internal Revenue Service | 46,643.15 |
| Second Secured Claim of State of Michigan | 20,451.00 |
| Third Secured Claim of Internal Revenue Service | 26,939.00 |
| Fourth Secured Claim of State of Michigan | 47,136.00 |

There are significant additional secured and priority tax claims in excess of $100,000.00, therefore, based on liquidation value of the assets, there would be no funds available if unsecured creditors upon liquidation of all assets in a Chapter 7 proceeding.

{00139063}

# EXHIBIT "B"